# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARRY B. DOBINSKY and** | : | **CIVIL ACTION** |
| **ROBERT W. McALLISTER, JR.** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | **NO. 3 CV-02-1291** |
| **v.** | : | |
| | : | |
| | : | **(JUDGE JAMES M.** |
| **CROMPTON & KNOWLES** | : | **MUNLEY)** |
| **COLORS INCORPORATED, now** | : | |
| **CROMPTON COLORS, INC. and** | : | |
| **SENSIENT TECHNOLOGIES** | : | |
| **CORPORATION** | : | |
| | : | |
| **Defendant.** | : | |

**FILED
SCRANTON

MAY 2 0 2003

PER _____
DEPUTY CLERK**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF <u>BARRY B. DOBINSKY</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY ................................................................................................. 2

FACTS ............................................................................................................................... 2

I.     Dobinsky's Prior Employment and his Change of Control Agreement ............................ 2

II.    The Sensient Asset Purchase ...................................................................................... 3

III.   The "Stlwkr5" Investigation and Oscar Weber's Pornography Use ................................ 3

IV.   Dobinsky's Knowledge of Weber's Pornography Use ................................................... 5

V.    Dobinsky's Discharge .................................................................................................. 6

VI.   Dobinsky's Own Pornography Use .............................................................................. 7

QUESTION PRESENTED ................................................................................................. 10

ARGUMENT ................................................................................................................... 10

I.     Dobinsky Is Not Entitled To Severance Pay Because He Engaged
In Conduct Constituting "Cause" Under His Agreement. ............................................. 10

     A.    The After-Acquired Evidence Doctrine Applies. ................................................. 10

     B.    Dobinsky's Misconduct Constitutes "Cause" Pursuant
to the Dobinsky Agreement ................................................................................ 15

     C.    It Is Undisputed That Sensient Would Have Terminated
Dobinsky Had It Been Aware Of His Misconduct ................................................ 17

CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

College Point Boat Corp. v. U.S., 267 U.S. 12 (1925)......................................... 14

McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995) ........................... 11

Reid v. Kraft General Foods, Inc., 1995 WL 263531 (E.D. Pa. April 27, 1995) ........ 14-15

Scherer v. Rockwell International Corp., 975 F.2d 356 (7th Cir. 1992)........................... 15

Spiro v. Asteak, 1992 WL 41322 (E.D. Pa. March 2, 1992)........................................... 15

United Incentives, Inc. v. Sea Gull Lighting Products, Inc., 1992 WL 121502
    (E.D. Pa. Aug. 16, 1990)........................................................................................ 15

## STATE CASES

Conemaugh Memorial Medical Center v. Unemployment Compensation
    Board of Review, 814 A.2d 1286 (Pa. Com. Ct. 2003)............................................. 16

Diamondhead Country Club and Property Owners Association, Inc. v.
    Montjoy, 820 So.2d 676 (Miss. Ct. App. 2000)....................................................... 14

Gassman v. Evangelical Lutheran Good Samaritan Society,
    933 P.2d 743 (Kan. 1997)....................................................................................... 14

Lewis v. Fisher Svc. Co., 495 S.E.2d 440 (S.C. 1998) .................................................. 14

O'Day v. McDonnell-Douglas Helicopter Co., 959 P.2d 792 (Az. 1998)................. 13, 14

## MISCELLANEOUS

Restatement (Second) of Contracts, § 237 (1981) ................................................... 13, 15

# INTRODUCTION

Two undisputed facts in this case entitle defendants Crompton & Knowles Colors Incorporated ("Crompton") and Sensient Technologies Corporation ("Sensient") to summary judgment against plaintiff Barry B. Dobinsky ("Dobinsky"). The first is that Dobinsky used his company computer to download and view vast amounts of pornography, in blatant violation of company policy and in total dereliction of the duties he was sworn to uphold as President of the company. Dobinsky has now admitted this. The second is that Dobinsky, as he has also now admitted, was fully aware of similar pornographic misconduct by another high-level company employee, but he not only failed to take any corrective action but withheld this information during a company investigation and knew that another employee (co-plaintiff, Robert McAllister) was withholding it as well. Either of these two facts alone constitutes more than sufficient "Cause" to disqualify Dobinsky from any entitlement to severance pay under his change of control agreement. Although Sensient did not learn of Dobinsky's willful misconduct until after it terminated his employment, the after-acquired evidence doctrine precludes Dobinsky from recovering any severance pay under his contract.

# PROCEDURAL HISTORY

The complaint in this action was filed on July 26, 2002. Discovery was completed by April 30, 2003, pursuant to the Court's November 22, 2002 Case Action Memorandum.

# FACTS

I.   Dobinsky's Prior Employment and his Change of Control Agreement

As of 1999, Dobinsky was employed as vice president of operations for Crompton, a dye manufacturing business. (Dobinsky Dep., attached as Exh. A, at 18:23-19:3). In that position, Dobinsky was responsible for five Crompton manufacturing sites, including a site in Gibraltar, Pennsylvania. (Dobinsky Dep. at 21:6-12). Dobinsky was promoted to President in January 2000. (Dobinsky Dep. at 36:22-23).

In February 2001, Dobinsky entered into an employment agreement with Crompton (the "Dobinsky Agreement," attached as Exh. B) that provided for certain payments in the event Crompton underwent a "Change of Control" and Dobinsky was terminated, other than for cause, during the change of control period. All of Dobinsky's claims in this action are based upon that agreement. Dobinsky's entire complaint relies on his claim that he is entitled to a severance payment under paragraph 7(d)(i) of the Dobinsky Agreement. (See Compl., attached as Exh.C, generally and at ¶¶ 12-25; Dobinsky Agr. at ¶ 7(d)(i)).

2

The Dobinsky Agreement provides that in the event Dobinsky's employment is terminated for "Cause," Dobinsky is not entitled to the paragraph 7(d)(i) severance payment. (Dobinsky Agr. ¶ 7(c)). "Cause" is defined as, among other things, "the Executive's willful conduct which is demonstrably and materially injurious to the corporation." (Dobinsky Agr. ¶ 6(b)).

## II.    The Sensient Asset Purchase

On November 30, 2001, Crompton sold its Gibraltar, Pennsylvania plant to Sensient pursuant to an Asset Purchase Agreement.[1] (Dobinsky Dep. at 39:18-21, 48:17-20). At that point, Dobinsky became an employee of Sensient (or a Sensient subsidiary), ultimately assuming the position of General Manager. (Dobinsky Dep. at 39:6-7, 40:1-9). Dobinsky was the highest level manager on-site, and was responsible for the overall operation of the Gibraltar plant, with all significant functions (e.g. sales, marketing, logistics and human resources, and administration) reporting to him. (Dobinsky Dep. at 49:2-6).

## III.    The "Stlwkr5" Investigation and Oscar Weber's Pornography Use

During latter part of 2001, Sensient management -- including Dobinsky -- became aware that an individual using the moniker "stlwkr5" was posting derogatory comments about the company and its management (including Dobinsky

---

1.    Defendants assume for the purposes of this motion only that this asset sale constituted a "Change of Control" as defined in the Dobinsky Agreement.

3

himself) on an internet message board. (Dobinsky Dep. at 170:19-171:24).[2]

Dobinsky and others made various attempts, without success, at learning stlwkr5's

identity. (Dobinsky Dep. at 172:1-174:2).

Around February 11, 2002, as part of Sensient's investigation into stlwkr5,

Richard Carney, Sensient's Vice President of Administration, came to the Gibraltar

plant and interviewed several employees, including Oscar Weber, Director of

Engineering, who reported directly to Dobinsky. (Carney Dep., attached as Exh.

D, at 10:19, 56:9-16; McAllister Dep., attached as Exh. E, at 67:11-20, 95:17-

100:11). Sensient had discovered mysterious internet history deletions on

Weber's computer and, suspecting he might have been trying to erase evidence that

he was stlwkr5, questioned him about them, with Dobinsky and McAllister

present. (Dobinsky Dep. at 130:21-131:10). Weber denied being stlwkr5, but after

much questioning finally admitted that the deletions were the result of his viewing

pornographic web sites on his company computer. (Dobinsky Dep. at 131:6-13).

Carney immediately terminated Weber's employment due to that misconduct.

(Dobinsky Dep. at 131:14-17; Carney Dep. at 86:19-20; 57:14-58:7).

---

2.   For example, one posting ridiculed "a president that spent more time running
an antique business than worrying about a faltering business." (Dobinsky
Dep. at 179:21-180:7). This was referring to Dobinsky. (Id.). Dobinsky
acknowledged that throughout his employment with both Crompton and
Sensient, he spent a significant amount of time -- approximately twenty to
thirty hours per week -- running an antique business. (Dobinsky Dep. at
135:13-141:1).

IV.    Dobinsky's Knowledge of Weber's Pornography Use

Dobinsky had been aware of Weber's improper internet usage well before Weber admitted it -- yet Dobinsky never said anything about it to Carney or any other higher-ranking management employee.  In early 2001, Frank Piscitello, a Crompton (and later Sensient) MIS employee, received a report from the company's internet service provider that Weber's computer was being used to access websites containing suspected pornographic materials.  (Piscitello Aff., attached as Exh. F, at ¶¶ 1-5).  Piscitello reported this to Robert McAllister and gave McAllister the written report he had received from the internet service provider.  (Piscitello Aff. at ¶ 6).  McAllister then told Dobinsky about that report.  (Dobinsky Dep. at 118:17-20, 121:14-123:10).  The report indicated that Weber had used his computer to access such internet sites as "www.nudesportsstars.com," "www.famous-naked.com," "cgi.sexlist.com," "www.nakedpopsingers.com," "www.acenudecelebs.com," and numerous others.  (See WebTrends Report on GIB115, attached as Exh. G).   McAllister and Dobinsky initially did nothing; when they received a second report of similar activity, all Dobinsky did was have McAllister tell Weber that "everybody's Internet usage was being scrutinized." (Dobinsky Dep. at 128:4-16).

Dobinsky said nothing about Weber's pornography use during Carney's initial visit to the plant when he was asked if there were any issues management

5

needed to be aware of, (Carney Dep. at 69:13-70:4), and nothing during Weber's interview. (Carney Dep. at 87:11-18). Dobinsky was also aware that Carney was investigating internet history deletions on Weber's computer, but again, said nothing, even though Weber's pornography use was the obvious explanation. (McAllister Diary, attached as Exh. H, at P80-P82; Dobinsky Diary, attached as Exh. I, at P99, P104).

V.   Dobinsky's Discharge

Carney, unaware of Dobinsky's (and McAllister's) prior knowledge of Weber's pornography use (Carney Aff., attached as Exh. K, at ¶¶ 9-10, 16)[3], discharged Dobinsky on February 18, 2002. (Complaint ¶ 20). Carney did so because, among other reasons, Dobinsky was perceived to be a very weak and ineffectual leader, someone who had let the plant go "out of control" and had failed to be forthcoming with management about the plant's problems. (Carney Dep. at 65:6-10, 68:13-69:4, 69:13-70:12).[4] There was also concern about Dobinsky spending too much time running his own antique business. (Carney Dep. at 61:5-

---

3.   This information did not surface until Frank Piscitello revealed his prior contacts with the internet service provider, and confirmed it in his affidavit, in March 2002. (See Piscitello Aff.).

4.   For the purposes of this motion only, Sensient concedes that whether it had "Cause" (as defined in the Dobinsky Agreement) to terminate Dobinsky's employment at the time it did so is an issue of disputed fact. Rather, as set forth infra, the evidence of cause at issue in this motion is solely after-

19).  Following Dobinsky's discharge, the stlwkr5 investigation continued, and

Sensient had the computers of Dobinsky, Weber, and several others analyzed for

evidence of stlwkr5 activity and, in light of Weber's admissions, for  pornography

use as well. (Carney Dep. at 73:12-20, 84:4-18).  Sensient engaged the Kroll

Information Security Group ("Kroll") to conduct this analysis.

VI.    Dobinsky's Own Pornography Use

     Kroll found evidence of downloaded pornographic images and of visits to

pornographic web sites not only on Weber's computer, but also on Dobinsky's.

(See Kroll Report and affidavit in support thereof, attached as Exh. J).  Kroll's

findings revealed that Dobinsky had accessed websites such as

"www.eroticashley.com," "www.celebrity-snatch.com," and "vis.sexlist.com."

(Kroll Report at Appendix KO-D).  There was also evidence that Dobinsky

downloaded hundreds of images with pornographic names.  Kroll generated a

thirteen page list of over 300 such images, which contained titles such as

"bondage10s.jpg," "nipple6_tn.jpg," and "suckme7.jpg."  (Kroll Report at

Appendix KO-E).  Kroll was able to view one such image, a particularly disturbing

depiction of sadomasochism.  (Kroll Report at Appendix KO-F).

---

acquired evidence that would have led Sensient to terminate Dobinsky for
"cause" had Sensient discovered this evidence prior to Dobinsky separation.

Sensient first learned of these findings when Kroll gave an oral report to Carney at the end of February 2002. (See Carney Aff. at ¶ 11). Kroll later issued its written report to Sensient, which was dated March 28, 2002. (Kroll Report at Appendix KO-B).

During the course of this litigation, Dobinsky has admitted to this pornography use, which was in direct violation of company policy and constituted conduct that was injurious to both Crompton and Sensient[5] -- conduct which easily constitutes "Cause" under the Dobinsky Agreement.

Like many companies, Crompton had an employee internet use policy. The policy prohibited employees from downloading "obscene, offensive or x-rated" material. (See Internet Policy, attached as Exh. L, at ¶ 4). Sensient's employee internet access policy contained the same prohibition. (See Carney Aff. at ¶ 4). When shown a copy of this policy, Dobinsky admitted that it had been issued to him and that it remained in force throughout the entire time period he was with Crompton (and, subsequently, with Sensient). (See Dobinsky Dep. at 105:8-106:16). He recognized the specific restriction referenced above and testified that its primary purpose was to limit the possibility of discrimination or sexual harassment suits that might be brought as a result of sexual or pornographic

---

5.    Defendants assume for the purposes of this motion only that, as plaintiffs allege, both Sensient and Crompton are parties to the Dobinsky Agreement.

materials being viewed on computer screens. (See Dobinsky Dep. at 106:17-107:14). This policy had, in fact, been e-mailed directly to Dobinsky. (See 11/24/98 e-mail, attached as Exh. M). As the General Manager of the Gibraltar plant, Dobinsky had complete responsibility for running the facility, including responsibility for personnel administration, and therefore was charged with ensuring compliance with the internet access policy. (Dobinsky Dep. at 48:2-6).

Dobinsky admitted in his deposition that, as the Kroll report indicated, he continuously and pervasively violated this policy during his employment with Crompton and Sensient by viewing pornography on his company computer. (Dobinsky Dep. at 108:7-111:3). He admitted to doing so for "an extended period of time," going back "[a] number" of years, and up until the time Sensient terminated his employment. (Dobinsky Dep. at 108:12-20).

During the three years prior to the termination of his employment, Dobinsky estimated that he viewed pornographic material on his company computer "certainly more frequently than once a week." (Dobinsky Dep. at 110:23-111:3). He admitted to viewing "[d]ifferent X-rated sites," and he described how he performed searches on yahoo.com for "[v]arious genital names," "breasts," and "various celebrity females with the word breasts, or that sort of thing." (Dobinsky Dep. at 108:23-110:3). He did so from his office using a company computer.

(Dobinsky Dep. at 110:9-14). Dobinsky was fully aware that his actions violated the company's internet access policy. (Dobinsky Dep. at 112:12-15).

## QUESTION PRESENTED

Are Crompton and Sensient entitled to summary judgment against Dobinsky in view of the undisputed evidence that Dobinsky engaged in conduct that, had it been discovered prior to his separation, would have constituted "Cause" for termination under his employment/change of control agreement?

## ARGUMENT

I.   Dobinsky Is Not Entitled To Severance Pay Because He Engaged In Conduct Constituting "Cause" Under His Agreement.

All three of Dobinsky's counts in the Complaint depend upon his contention that he is entitled to severance pay under paragraph 7(d) of the Dobinsky Agreement. Because under paragraph 7(d)(i) Dobinsky is not entitled to those payments if his employment is terminated for "Cause," and because there is undisputed evidence that he engaged in conduct during his employment constituting "Cause," all of his claims must fail. That Dobinsky managed to hide this conduct until after his separation does not save his claims.

A.   The After-Acquired Evidence Doctrine Applies.

It is well established that an employment action plaintiff cannot escape the ramifications of job misconduct simply because his employer did not discover it until after terminating him. The United States Supreme Court explicitly

recognized this "after-acquired evidence" doctrine in <u>McKennon v. Nashville Banner Publishing Co.</u>, 513 U.S. 352 (1995). In <u>McKennon</u>, a discrimination case, the Court held that after-acquired evidence may be considered in determining the scope of an employer's liability. Specifically, the Court found that neither reinstatement nor front pay is appropriate if the employer demonstrates: 1) that the employee committed misconduct during or prior to his or her employment; and 2) that, had the employer discovered the misconduct at an earlier time, it would have terminated the employee on those grounds alone. <u>See id.</u> at 362. The employee's misconduct must be addressed, explained the Court, in order "to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." <u>Id.</u> at 361.

Because of the nature and purpose of anti-discrimination statutes, the Court found that after-acquired evidence in the discrimination context only limits damages, and does not bar employer liability. The objective of statutes such as Title VII and the Age Discrimination in Employment Act -- eliminating discrimination in the workplace -- is furthered any time an employee establishes that an employer has discriminated against him or her, and the subsequent discovery of evidence of employee wrongdoing does not change the fact that this discrimination occurred. <u>See id.</u> at 884-885.

11

In the employment contract context, courts have applied the after-acquired evidence doctrine, but have extended it so that it constitutes a complete defense to employer liability. The reasoning of these courts is that the general rationale behind the after-acquired evidence doctrine fully applies in the employment contract setting -- that is, an employee should not be permitted to avoid the repercussions of on-the-job misconduct simply because the employer did not discover it until after terminating the employee. What is not present are the policy concerns in discrimination cases that preclude using after-acquired evidence as a complete bar to liability. There is no discrimination to be remedied. There is simply no reason why after-acquired evidence of employee misconduct should not completely bar Dobinsky from recovering severance pay under his employment contract, as long Sensient can show that had it been aware of the misconduct, it would have terminated Dobinsky for "cause" as defined in the Dobinsky Agreement.[6]

---

6.    Dobinsky will no doubt complain that Sensient did not comply with the notice procedures set forth in the contract for a termination for cause. That issue is irrelevant to this motion. Defendants are not arguing here that Sensient terminated Dobinsky for cause; they are arguing that after-acquired evidence of misconduct, which would have supported a for-cause termination, precludes Dobinsky from recovering under the contract. If (as is undisputed) Sensient was unaware of Dobinsky's misconduct at the time it terminated him, it cannot be charged with following the termination-for-cause procedures with respect to that misconduct.

Numerous courts have applied the after-acquired evidence doctrine beyond the discrimination context and permitted such evidence to serve as a complete bar to liability, recognizing that the policy concerns underlying anti-discrimination laws are not present. In <u>O'Day v. McDonnell-Douglas Helicopter Co.</u>, 959 P.2d 792 (Az. 1998), the Arizona Supreme Court held that employee misconduct is a complete defense to an employee breach of contract claim "if the employer can demonstrate that it would have fired the employee had it known of the misconduct." <u>Id.</u> at 795-796. The <u>O'Day</u> court recognized that "[t]he overwhelming majority of courts hold that if an employer can demonstrate that it would have fired an employee had it known of prior misconduct, then the employee's claim for breach of contract is barred or, put differently, the prior misconduct excuses the employer's breach." <u>Id.</u> 795.

In reaching its result, the <u>O'Day</u> court relied on traditional contract doctrines; in particular, the rule that "it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." <u>Id.</u> at 795 (quoting <u>Restatement (Second) of Contracts</u> § 237). In other words, if an employee materially breaches his employment contract (by, for example, engaging in misconduct that would justify his termination), any future duties of the employer under that contract are

13

extinguished. The employer can justify the termination or rescission of the contract "by proving that there was adequate cause, though it was not known to him until later." Id. (quoting College Point Boat Corp. v. U.S., 267 U.S. 12, 15-16 (1925)).

Other courts have reached similar results. See, e.g., Gassman v. Evangelical Lutheran Good Samaritan Society, 933 P.2d 743, 747 (Kan. 1997) (holding that where no public policy concerns are implicated, a discharged employee "is not entitled to any relief if [the employer] can establish after-acquired evidence for termination"); Lewis v. Fisher Svc. Co., 495 S.E.2d 440, 445 (S.C. 1998) (holding that after-acquired evidence is a defense to liability in all breach of employment contract actions provided that the employer proves that the wrongdoing "was of 'such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge'") (citation omitted); Diamondhead Country Club and Property Owners Association, Inc. v. Montjoy, 820 So.2d 676, 685-686 (Miss. Ct. App. 2000) (after-acquired evidence of misconduct is a defense to a breach of employment contract action).

There is little doubt that Pennsylvania courts would follow this same analysis. Courts have applied the after-acquired evidence doctrine in the employment discrimination context to claims under Pennsylvania law as well as under federal law. See Reid v. Kraft General Foods, Inc., 1995 WL 262531, *8-

14

*10 and n.9 (E.D. Pa. April 27, 1995) (applying after-acquired evidence doctrine to both Title VII and Pennsylvania Human Relations Act claims). Courts have also applied Section 237 of the Restatement (Second) of Contracts to Pennsylvania law breach of contract claims. See, e.g., United Incentives, Inc. v. Sea Gull Lighting Products, Inc., 1992 WL 41322, *5 (E.D. Pa. March 2, 1992); Spiro v. Asteak, 1990 WL 121502, *3 (E.D. Pa. Aug. 16, 1990). As noted above, the O'Day court relied upon that section of the Restatement in finding the after-acquired evidence doctrine to be an absolute bar to employer liability in employment breach of contract actions.

B.   Dobinsky's Misconduct Constitutes "Cause" Pursuant to the Dobinsky Agreement.

It cannot be seriously disputed that Dobinsky's extensive use of his company computer to view pornography was "willful conduct which is demonstrably and materially injurious to the Corporation," and therefore sufficient Cause for his termination without severance under the Dobinsky Agreement. Dobinsky himself acknowledged that the purpose of the Crompton and Sensient policy prohibiting pornography is to limit the chance that an employee might bring a discrimination or sexual harassment suit against the company. (Dobinsky Dep. at 107:8-14). Putting the company at risk of a sexual harassment lawsuit is terminable willful misconduct. Cf. Scherer v. Rockwell Int'l Corp., 975 F.2d 356 (7th Cir. 1992) (sexual harassment constitutes "misconduct" under employment contract).

15

Moreover, the Pennsylvania Commonwealth Court has suggested that downloading pornography in violation of company policy constitutes "willful misconduct" under the Pennsylvania unemployment compensation law.  See Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review, 814 A.2d 1286, 1288  (Pa. Com. Ct. 2003).

Dobinsky explicitly admitted his conduct was willful, and also acknowledged it was injurious, because it was in direct violation of the company's policy and he acknowledged that the policy existed to decrease the risk that the company would be subject to a sexual harassment or discrimination lawsuit.[7]  The same can be said for Dobinsky's failure to alert the company to Weber's pornography use even though he was aware the company was investigating missing internet histories.

The viewing of pornography by employees at work, and the sexual harassment and sex discrimination problems that it creates, is obviously a very serious problem in today's workplace, especially given how widespread employee internet access now is.  Companies like Crompton and Sensient routinely adopt anti-pornography policies in order to combat that problem.  As the one-time

---

7.  "Injurious" is defined as "causing or tending to cause injury; harmful."  The American Heritage College Dictionary, 3d Ed (emphasis added).  There is therefore no need to show that Dobinsky's conduct actually caused measurable monetary damage to Sensient; that it increased Sensient's risk of a lawsuit and therefore was conduct that "tended to cause injury" is enough.

President of Crompton, and later the General Manager at Sensient, Dobinsky was charged with enforcing the internet access policy. One wonders how the policy can be enforced at all when a high level employee such as Dobinsky who is supposed to enforce the policy blatantly violates it himself and tolerates its violation by others.

C.  It Is Undisputed That Sensient Would Have Terminated Dobinsky Had It Been Aware Of His Misconduct.

Sensient -- specifically, Carney -- undoubtedly would have terminated Dobinsky's employment after becoming aware of either his history of viewing pornography on a company computer (or of his toleration of and deception regarding Weber's pornography use). The best evidence of this is that Carney immediately terminated Weber's employment as soon as Weber confessed to the same conduct. Carney had also terminated another employee several years prior for similar conduct. (See Carney Aff. ¶ 5). Furthermore, Dobinsky was a high-ranking employee and in fact was responsible for the entire Gibraltar plant. There can be no doubt, especially given the evidence of its unwillingness to tolerate other violations of the internet access policy's "no pornography" rule, that Sensient would have terminated the employment of a high-ranking employee for engaging in such misconduct.

Ironically, Dobinsky himself had banned an employee of a cleaning contractor from the plant after learning that the employee had used a plant

17

computer to visit x-rated web sites. (Dobinsky Dep. at 119:1-23).[8]  Carney has

also asserted that he would have terminated  Dobinsky had he been aware of either

Dobinsky's own pornography use or his inaction and deception with respect to

Weber's pornography use.  (Carney Aff. at ¶¶ 12, 16).  There is no evidence to the

contrary.

## CONCLUSION

It undisputed that: 1) Dobinsky engaged in intentional misconduct during his

employment with Sensient (and during his employment with Crompton) that was

demonstrably and materially injurious to the company; and 2) had Sensient been

aware of this conduct, it would have terminated Dobinsky for it.  The Dobinsky

Agreement precludes Dobinsky from recovering severance pay in the event he is

terminated for cause.  The after-acquired evidence doctrine therefore bars any

liability of Crompton or Sensient for severance pay under Dobinsky's change of

control employment agreement.

---

8.      Dobinsky testified that in 1999 or 2000, he learned that a person on the plant
cleaning crew had been using a plant computer, after hours, to visit x-rated
sites. (Dobinsky Dep. at 119:1-6).  That person was an employee of the
cleaning company with which Crompton contracted.  (Dobinsky Dep. at
120:7-13).  Crompton told the cleaning company that the responsible
employee would no longer be permitted in the plant.  (Dobinsky Dep. at
121:7-10).

Respectfully submitted,

Dated:  May 19, 2003

Alan D. Berkowitz, Esq. (PA 32735)
Adam F. Welsh, Esq. (PA 84988)
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
(215) 994-4000
(215) 994-2222 (fax)

Albert Zakarian, Esq.  (CT 04201)
Eric Sussman, Esq. (CT 19723)
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103
(860) 275-0100

Attorneys for Defendants Sensient
Technologies Corporation and
Crompton & Knowles Colors
Incorporated

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Defendants' Motion for Summary

Judgment Against Barry B. Dobinsky was served upon the following parties on

May 19, 2003, via federal express addressed as follows:

> Danielle Mulcahey, Esq.
> Wright & Associates
> 148 Adams Avenue
> Scranton, PA 18503

Adam F. Welsh

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARRY B. DOBINSKY and<br>ROBERT W. McALLISTER, JR.** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **NO.  3 CV-02-1291** |
| **v.** | : | |
| | : | **(JUDGE JAMES M.** |
| **CROMPTON & KNOWLES** | : | **MUNLEY)** |
| **COLORS INCORPORATED, now** | : | |
| **CROMPTON COLORS, INC. and** | : | |
| **SENSIENT TECHNOLOGIES** | : | |
| **CORPORATION** | : | |
| **Defendant.** | : | |

## CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION

Purusant to Local Rule 7.8(b)(2), Counsel for defendants Crompton &
Knowles Colors Incorporated, now Crompton Colors, Inc. and Sensient
Technologies Corporation hereby certify that Defendants' Memorandum of Law in
Support of Their Motion For Summary Judgment Against Plaintiff Barry B.
Dobinsky is **3509** words in length, according to the word processor word count
feature.

Dated:  May 19, 2003

Adam F. Welsh, Esq.