IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY B. DOBINSKY and | : | No. 3:02cv1291 |
| ROBERT W. McALLISTER, JR., | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| CROMPTON & KNOWLES COLORS | : | |
| INCORPORATED, now CROMPTON | : | |
| COLORS, INC. and SENSIENT | : | |
| TECHNOLOGIES CORPORATION, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition are motions for summary judgment filed by both the plaintiffs and the defendants. The plaintiffs are Barry B. Dobinsky and Robert W. McAllister, and the defendants are Crompton & Knowles Colors Incorporated ("Crompton") and Sensient Technologies Corporation ("Sensient").

## Background[1]

Defendant Crompton employed Plaintiff Dobinsky as vice-president of operations and later as president.[2] He was responsible for Crompton's Gibraltar, Pennsylvania plant. Plaintiff MacAllister worked at the same plant as the director of administration, with

---

[1] The background facts are derived from the parties' statements of undisputed facts and are undisputed.

[2] Defendant Crompton is in the dye manufacturing business.

responsibility for human resources.[3]

On February 15, 2001, the plaintiffs entered into identical employment agreements with Crompton. The agreements contained terms that were evidently for the purpose of protecting the plaintiffs' jobs if the company experienced a "change of control." The agreements provide that in the event of a change of control if the plaintiff's employment is terminated for other than good cause, Crompton will pay them one year's salary plus the average of the prior three years' bonuses.

In November 2001, substantially all of Crompton's assets were sold to Sensient. Plaintiffs assert that this sale effected a "change of control" as set forth in their employment agreements. In February 2002, Sensient terminated the employment of both plaintiffs. The plaintiffs claim that they were not terminated for cause and that Sensient did not abide by the notice and hearing provisions of the employment agreement.

The plaintiffs have made demands to both Crompton and Sensient for the amount of money that they assert is owed under the employment agreements. No payments have been made. Accordingly, the plaintiffs instituted the instant case raising various breach of contract and third-party beneficiary claims. At the close of discovery, both the plaintiffs and the defendants moved for summary judgment. The motions have been fully briefed, bringing the matter to its present posture.

---

[3]Both plaintiffs were hired in 1984.

2

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. §

1332. The plaintiffs are residents of Pennsylvania. Defendant Compton is a Delaware

corporation with a principal place of business in Connecticut, and Defendant Sensient is a

Wisconsin corporation with a principal place of business in Wisconsin. Because we are

sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.

Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins,

304 U.S. 64, 78 (1938)).[4]

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R.

CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in

---

[4]Moreover, the employment agreement at issue contains a choice of law provision providing that the law of Pennsylvania shall apply to the construction of the agreement. See Employment Agreement, at ¶ 11.

the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

The parties have raised numerous issues in their motions for summary judgment including:   Is Sensient bound by the employment contracts entered into by Crompton?  Can information acquired after the termination indicating employee misconduct excuse defendants from paying damages under the employee contracts?  If the "after-acquired" information can be used, is there any question of material fact with regard to whether the defendants would have fired the plaintiffs' for cause had they known of the "after-acquired" information at the time of termination?  We shall discuss these issues *seriatim*.

## I. Is Sensient bound by the employment contracts?

First, we will discuss an issue that affects both plaintiffs, that is whether Defendant

Sensient is bound by the contracts entered into by Defendant Crompton & Knowles with the

employees.  This matter arises because in its summary judgment brief, plaintiffs claim that

Sensient is so bound, but Sensient claims that it is not.

A review of the record indicates that Defendant Sensient has assumed all

responsibility for the employment agreements.  The Asset Purchase Agreement states that

"[Sensient] shall assume all obligations and liabilities of Colors and its Affiliates under all

Employment Agreements listed in Schedule 7.1(b)."  Asset Purchase Agreement, ¶ 7.1(b);

Pl. App., Ex. F.  The Dobinsky and McAllister Employment Agreements are listed in

Schedule 7.1(b). Id.  The asset purchase agreement, which was signed by John L. Hammon,

Vice President, Secretary and General Counsel of Sensient, also provides that: "[Sensient]

shall assume and be solely responsible for all liabilities arising out of or resulting from such

assumption .. . . " Id.  The agreement further states: "[Sensient] acknowledges that the

consummation of the transactions contemplated by this Agreement will result in a "change

of control" for purposes of the Employment Agreements listed in Schedule 7.1(b)." Id.

Defendants claim that because the plaintiffs were not parties to the Crompton-

Sensient Asset Purchase Agreement, the only basis upon which they make a claim on that

contract is to establish third-party beneficiary status.  Defendants have cited no authority for

this proposition.  As Sensient has assumed the responsibilities of the Employee Agreements,

plaintiffs may properly sue them.  See, e.g., Etter v. Industrial Valley Bank and Trust Co.,

515 A.2d 6 (Pa. Super. Ct. 1986).   Moreover, plaintiffs have sued both Sensient and

Crompton.  Sensient has agreed to defend and indemnify Crompton in the instant case.[5]  See

Pl. App. Ex. E, Pintoff Dep. Tr. at p. 30.  Therefore, this issue appears to be of little

importance.

## II.  Can the evidence of employee misconduct acquired after the terminations be used to justify the terminations?

As plaintiffs assert a breach of contract, it is appropriate to examine the contracts at

issue.  The employee agreements provide that the plaintiff's[6] employment may be terminated

for "cause."  "Cause" is defined as:

> (i) the [employee's] willful and continued failure to substantially
> perform assigned duties with the Corporation. . . after a demand
> for substantial performance is delivered to the [employee] by the
> Board of Directors of the Corporation, specifically identifying
> the manner in which the Board believes that the duties have not
> been substantially performed; or
> (ii) the [employee's] willful conduct which is demonstrably and
> materially injurious to the Corporation.  For purposes of this
> paragraph (b), no act, or failure to act, shall be considered
> "willful" unless done, or omitted to be done, not in good faith
> and without reasonable belief that such action or omission was in
> the best interest of the Corporation.

---

[5]Interestingly, this issue only arises because the plaintiffs raised it in their motion for summary judgment.  Defendant Sensient did not raise the issue of whether it could be held bound by the Employment Agreements in its own motion for summary judgment.

[6]Where use the term "employee" interchangeably here as the employment contracts of both plaintiff's are identical.

Def. Ex. B, Employment Agreement, ¶ 6(b) (hereinafter "Employment Agreement, at ___.")

If the plaintiff's employment is terminated for cause, the employer is obligated to pay the employee his full base salary through the date of termination. Employment Agreement at ¶ 7(c). If however, the plaintiff is terminated for a reason other than for cause, the corporation is obligated to pay the employee the employee's base salary for a period of one (1) year and an amount equal to the average of the total annual bonuses paid to the employee for the past three years. Employment Agreement at ¶ 7(d).

Before an employee may be terminated for cause, he must be given a written notice indicating the reason for his termination. The Notice of Termination must be in the form of a certified copy of a resolution duly adopted by the Board of Directors, after the employee has been provided the opportunity to be heard, together with counsel, before the Board. Employment Agreement at ¶ 6(d).[7]

---

[7]The agreement reads as follows:
> Any termination by the Corporation for Cause . . . shall be effected by Notice of Termination to the other party hereto given in accordance with Section 11(b) of this Agreement. For purposes of this Agreement, a "Notice of Termination" means a written notice which (i) indicates the specific termination provision in this Agreement relied upon, (ii) sets forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the [employee's] employment under the provision so indicated and (iii) if the termination date is other than the date of receipt of such notice, specifies the termination date. . . . In the case of termination for Cause, the Notice of Termination shall not be effective unless it takes the form of a certified copy of a resolution duly adopted in good faith by the affirmative vote of the entire membership of the Board at a

Plaintiffs claim that the they were not terminated for "cause" pursuant to the agreement.  They argue that paragraph 6(b)(i) does not apply because they were never provided with a demand from the Board of Directors for "substantial performance" or explaining that the Board felt that they were failing to substantially perform their duties. Plaintiffs further claim that paragraph 6(b)(ii) does not apply because there was no evidence of willful conduct which was demonstrably and materially injurious to the Corporation.

Moreover, even if they were terminated for cause, the defendants violated the agreement because the plaintiffs were never provided with a "Notice of Termination" or a resolution from the Board giving them opportunity to be heard before the Board.  For all of these reasons, the plaintiffs claim that the defendants failed to comply with the employment agreement and the damages provided for in the contract are due to them.

Defendants, on the other hand, assert that plaintiffs are precluded from recovering any damages under their employment agreements because undisputed evidence establishes that during their employment they committed willful misconduct rising to the level of "cause" as defined in the agreements.  This evidence, however, was uncovered after the termination and shall henceforth be referred to as "after-acquired" evidence.  The issue the court must first decide is whether the defendants can use after-acquired evidence to excuse

---

meeting of the Board called and held for the purpose, after
reasonable notice and an opportunity for the [employee] together
with counsel, to be heard before the Board."
Agreement ¶ 6(d).

its own alleged breach of contract.

The after-acquired evidence doctrine has been approved by the United States Supreme Court not, however, in the breach of employment contract context, but in the context of employment discrimination. See McKennon v. Nashville Banner Publishing co., 513 U.S. 352 (1995). In McKennon, a plaintiff sued her former employer for violation of the age discrimination in employment law. During discovery in the case, the employer learned that the plaintiff had engaged in misconduct while it employed her. Id. at 355. The Supreme Court held that the existence of the after-acquired evidence affected the remedy that the plaintiff could recover. The Court concluded that neither reinstatement nor front pay would be an appropriate remedy as it would be inequitable and pointless to order the reinstatement of someone the employer would have terminated on lawful grounds. Id. at 361 - 62. In addition, the plaintiff would only be allowed to collect backpay from the time of her termination until the time that the employer discovered the new information that would have justified dismissal. Id. at 362. The Court stated that: "An absolute rule barring any recovery of backpay, however, would undermine the ADEA's objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from age discrimination." Id.

The instant case, however, is not an employment discrimination case, but rather a breach of contract case. Regardless, the defendants argue that we should adopt the "after-acquired" evidence doctrine set forth by the Supreme Court in McKennon and apply it to the

9

instant case to bar any recovery by the plaintiffs. In support of their position, the defendants cite several state court cases. The Pennsylvania courts have apparently not addressed this issue and as stated above, we must apply Pennsylvania law.

For example, in O'Day v. McDonnell Douglas Helicopter Co., 959 P.2d 792 (Az. 1998), the Supreme Court of Arizona discussed the issue of common law breach of contract and after-acquired evidence. The court held that after-acquired evidence of employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired the employee had it known of the misconduct. Id. at 796. The defendants cite several other state court cases that also hold that after-acquired evidence may be used in such cases. See, e.g., Diamondhead Country Club v. Montjoy, 820 So.2d 676 (Miss. Ct. App. 2001); Lewis v. Fisher Service Co., 495 S.E.2d 440 (S.C. 1998) and Gassman v. Evangelical Lutheran Good Samaritan Soc., Inc., 933 P.2d 743 (Kan. 1997)

A distinction exists between these cases, and the instant case, however. In the instant case, there was a written employment contract. It sets forth a specific procedure for the employer to utilize if it seeks to dismiss the plaintiffs for cause, including an opportunity for the plaintiffs to be heard on the charges. In the cases cited by the defendants no such explicit contract provisions were present. See Diamondhead 820 So.2d at 682 (contract did not provide a notice requirement for a premature termination of the contract for cause); Lewis, 495 S.E.2d at 441 (no written contract but employee did have a employee manual

10

that provided for progressive discipline unless the employee's behavior violated very serious and widely recognized behavior standards); Gassman, 933 P.2d at 744 (plaintiff sued on an implied employment contract); O'Day, 959 P.2d at 796 (court dealt with an implied contract of employment).

We must decide, therefore, whether the after-acquired evidence doctrine applies in the context of an employment contract where the procedures set forth for a valid "for cause" termination were not followed. After a careful review, we find that it does so apply.

The Arizona Supreme Court has noted: "The overwhelming majority of courts hold that if an employer can demonstrate that it would have fired an employee, had it known of prior misconduct, then the employee's claim for breach of contract is barred, or put differently, the prior misconduct excuses the employer's breach." O'Day v. McDonnell Douglas Helicopter Co., 959 P.2d 792, 795 (Az. 1998). Because the overwhelming majority of jurisdictions have used the after-acquired evidence doctrine, and because it has been applied in United States District Court sitting in Pennsylvania in the employee discrimination, see e.g. Reid v. Kraft General Foods, Inc., 1995 WL 262531, at *8- *9 (E.D. Pa. April 27, 1995). Bullock v. Balis & Co., Inc., 2000 WL 1858719, at * 9 (E.D. Pa. Dec. 19, 2000), we find that the Pennsylvania Supreme Court would adopt the doctrine if faced with the issue.

Plaintiffs complain that the defendants breached the contract by not providing the relevant notice and hearing in the case. We find that this fact does not merit summary

judgment against the defendants. By applying the after-acquired information doctrine, we acknowledge that the defendants were not aware of the alleged employee wrongdoing prior to the termination. Therefore, they could not have provided the notice and hearing on these issues. Moreover, as explained more fully below, the plaintiffs will get a hearing by the jury with respect to whether there was sufficient cause to terminate their employment.

In addition, our holding is in accord with Pennsylvania law. The Pennsylvania Superior Court has explained as follows:

> When a formal written contract of employment has been entered into, courts historically have accepted the position that discharge of the employee before the end of the contract can give rise to liability under ordinary breach of contract principles. The general rule is that a party who has materially breached a contract may not complain if the other party refuses to perform his obligations under the contract. A party may not insist upon performance of the contract when he himself is guilty of a material breach of the contract. Moreover, where the evidence to sustain the justification for discharges is disputed the jury must pass on it.

Ott v. Buehler Lumber Co., 541 A.2d 1143, 1145 (Pa. Super. Ct. 1988) (internal citations and quotation marks omitted).

Therefore, if the plaintiffs materially breached the contract first, i.e. performed in such a way as to provide cause for their termination, they will not be able to enforce the terms of the contract. If, on the other hand, the plaintiffs did not materially breach the contract first, then the defendants will be liable for the damages provided for in the employment agreement. The only facet we are adding to the Pennsylvania law is our holding that after-acquired information can be used by the defendants to justify the

12

plaintiffs' terminations. And as explained, this holding is in accord with the majority of jurisdictions.

In order to prove its case, however, the defendants must establish not only that the plaintiff engaged in the alleged wrongful conduct, but that "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon, 513 U.S. at 362-63. Defendants claim that they have so proved and that summary judgment is appropriate in their favor. We shall examine each plaintiff separately with regard to whether questions of fact exist in this regard.

**A. Barry Dobinsky**

At the time, Dobinsky was fired because he was perceived to be a very weak and ineffectual leader, and had let the plant that he was in charge of go "out of control." Further, he had failed to be forthcoming with management about the plant's problems. Defendants were also concerned about Dobinsky spending too much time running his own antique business that had nothing to do with the defendants. (Carney Dep. at 65, 68-70).

The defendants conceded that this information does not definitively prove "cause" sufficiently to meet the summary judgment standard. Defs' Memo in support at 6 - 7, n 4. Defendants, however, rely on the following "after-acquired" evidence to support the dismissal for cause.

Defendants discovered evidence of downloaded pornographic images and visits to

pornographic websites on his work computer. (Kroll report and affidavit in support thereof, def. ex J). Defendants claim that plaintiff Dobinsky thus violated the company's Internet access policy and he could have been fired for cause.   Moreover, Dobinsky knew that another employee had used his company computer to view pornographic material and did not alert the company to this when it was investigating missing Internet histories.

Defendants assert that there is no doubt that if it had known of this misconduct it would have terminated the plaintiff, and that this evidence establishes as a matter of law that cause existed for the plaintiff's termination.

Dobinsky provides explanations for everything that the defendants claim provided cause for his termination.  He admits that he accessed pornographic websites on his computer, but asserts that he did so towards the end of the day and mostly after office hours. Nobody ever saw him access these Internet sites.  (Dobinsky Dep. Pl. Ex. A at 110 -11). Dobinsky claims that this conduct does not arise to the level of cause needed to justify his termination under the employment contract.  In addition, he claims that he never told the management about another employee's improper Internet usage because he took action and the improper usage stopped.  Id. at 128.  He has never been able to present these explanations, however, because he was never provided the hearing required under the employee agreement.

We cannot determine as a matter of law that the after-acquired evidence amounts to "cause" under the Employment Agreement as too many questions of fact exist.

Accordingly, summary judgment will be denied with respect to Plaintiff Dobinsky.

**B. Robert W. McAllister**

At the time of McAllister's discharge, the justification for his firing was that he was an ineffective human resources manager, and many of Sensient management employees believed that he had not adequately handled plant issues and had let things get out of control. (Carney Dep. at 64, 60, 68, 69). After-acquired evidence indicates that McAllister, contrary to the company's substance abuse policy, failed to take any action after an employee tested positive for cocaine. In addition, he engaged in "deception" regarding another employee's misuse of the Internet. Either of these two matter would have led to his termination had the company known about them at the time. (Carney aff. para. 16 - 17).

McCallister claims that he was never able to follow up on the drug test because he was unable to contact the employee as he had been moved to a different plant. Moreover, he had been told to concentrate all his efforts on another matter. He was terminated less than a month after he was informed of the employee's drug test. (McAllister Dep. at 75- 76). With regard to the other employee's misuse of the Internet, McAllister claims that he handled the issue in a manner that was best for the company in light of the employee's value to the company. (McAllister Dep. at 41 - 55).

We find that genuine issues of material fact exists as to whether the defendants had "cause" to terminate Plaintiff McAllister. Based upon the plaintiff's explanation for his actions, we cannot find as a matter of law that the termination was for cause. Accordingly, a

jury question exists.

**Conclusion**

  For the aforementioned reasons, the motions for summary judgment will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY B. DOBINSKY and | : | No. 3:02cv1291 |
| ROBERT W. McALLISTER, JR., | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| CROMPTON & KNOWLES COLORS | : | |
| INCORPORATED, now CROMPTON | : | |
| COLORS, INC. and SENSIENT | : | |
| TECHNOLOGIES CORPORATION, | : | |
| Defendants | : | |

## ORDER

AND NOW, to wit, this 30th day of March 2004, the defendants' motions for

summary judgment, (Docs. 19 and 22) and the plaintiffs' motions for summary judgment,

(Docs. 25 and 26)  are hereby DENIED.

BY THE COURT:


s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court